1   LAURENT R.G. BADOUX; AZ Bar No. 020753
    lbadoux@littler.com
2   LITTLER MENDELSON, P.C.
    2425 East Camelback Road
3   Suite 900
    Phoenix, AZ  85016
4   Telephone:   602.474.3600
    Facsimile:   602.957.1801
5
    JOHN C. KLOOSTERMAN, CA Bar No. 182625
6   LAURA E. HAYWARD, CA Bar No. 204014
    LITTLER MENDELSON
7   A Professional Corporation
    650 California Street, 20th Floor
8   San Francisco, CA  94108.2693
    Telephone:   415.433.1940
9
    Attorneys for Petitioner
10  24 HOUR FITNESS USA, INC.

11

12

13

14

15

16                  UNITED STATES DISTRICT COURT

17                       DISTRICT OF ARIZONA

18

19  24 HOUR FITNESS USA, INC. a            Case No.
    California corporation dba 24 HOUR
20  FITNESS,                               **24 HOUR FITNESS' PETITION TO
                                           COMPEL ARBITRATION**
21                 Petitioner,

22       v.

23  MONICA DI GIURO,

24                 Respondent.

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

I.    INTRODUCTION

Monica Di Giuro ("Claimant") is seeking overtime pay due to alleged misclassification and/or off-the-clock work from his/her former employer 24 Hour Fitness USA, Inc. ("24 Hour Fitness") pursuant to the Fair Labor Standards Act ("FLSA"). Claimant has already conceded the existence of a valid arbitration agreement which covers the nature of the dispute because Claimant has previously demanded arbitration of these claims.   However, Claimant refuses to arbitrate his/her claims in the appropriate forum – the location where Claimant worked for 24 Hour Fitness. Accordingly, 24 Hour Fitness requests that the Court compel arbitration in accordance with the terms of the Arbitration Policy, in the District of Arizona.[1]

II.   STATEMENT OF FACTS

A.    Claimant's Employment at 24 Hour.

Claimant worked for 24 Hour Fitness until May 9, 2004.  Claimant last worked for the Company outside of California in Tempe, Arizona.  Declaration of Laura E. Hayward ("Hayward Decl.") ¶6.

B.    Claimant Is Bound By the Terms Of the 2001 Arbitration Agreement.

Claimant is bound by 24 Hour Fitness' 2001 Arbitration Agreement, which was in effect from December 2001 until January 2005.  Hayward Decl. ¶7, Exh. C.  Claimant has conceded that he/she was party to an arbitration agreement with 24 Hour Fitness by filing a demand for arbitration against the Company.  Because Claimant's employment at 24 Hour Fitness ended during the period covered by the 2001 Arbitration Agreement, Claimant is covered by that version of the agreement.

---

[1] While 24 Hour Fitness is asking this court to compel arbitration, it by no means concedes that Claimant has valid claims.  In fact, 24 Hour Fitness contends that Claimant failed to comply with the tolling provision set forth in the Northern District of California's February 24, 2011 Order in *Beauperthuy v. 24 Hour Fitness*, Case No. C 06 0715 (SC), because Claimant served 24 Hour Fitness with his/her demand for arbitration more than 30 days after the Court's Order was entered, and on that basis is untimely.  Further, 24 Hour Fitness believes that some or all of Claimant's claims are barred by the applicable limitations period in the FLSA, which is two years; three years if the conduct at issue was willful.  29 U.S.C. §255.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

2.

1    Throughout his/her employment, Claimant agreed to be bound by the most

2    recent 24 Hour Fitness' Arbitration Agreement in effect.  During this time period, there

3    existed no way for an employee to "opt out" of 24 Hour Fitness' arbitration agreement, or

4    any modifications thereto.  Moreover, it is well accepted that an employer is able to change

5    the terms and conditions of an at-will employee's employment, at any time.  *See e.g., Cotter*

6    *v. Desert Palace*, 880 F. 2d 1142, 1145 (9th Cir. 1989)("An employer privileged to terminate

7    an employee at any time [under the at-will doctrine] necessarily enjoys the lesser privilege of

8    imposing prospective changes in the conditions of employment."); *Gebhard v. Royce*

9    *Aluminum Corp*., 296 F. 2d 17, 19 (1st Cir. 1961)(Since defendant could discharge plaintiff

10   at any time "it could equally initiate modifications at any time, other than as to accrued

11   matters."); *Schoppert v. CCTC Intern., Inc*., 972 F. Supp. 444, 447 (N.D. Ill. 1997)("When

12   an employment agreement is terminable at will, it may be modified by the employer as a

13   condition of its continuance.")   By remaining employed after policy changes are made,

14   Claimant signaled acceptance of any new policies.  Particularly where an employee reaps

15   advantages from other sections of the handbook (i.e. vacation, health insurance, holidays), he

16   who takes the benefits must also bear the burdens.  *Schoppert v. CCTC Intern., Inc.,* 972 F.

17   Supp. 444, 447 (N.D. Ill. 1997)("Because the continuation of an at-will relationship cannot

18   be taken for granted, if one party proposes a change to the terms of the contract and the other

19   party nonetheless continues to perform as usual, the modification to the contract is deemed to

20   be effective. The continued performance is seen as both acceptance and consideration.")

21   Under the terms of the 2001 Arbitration Agreement, under which Claimant

22   worked, disputes between the parties must be arbitrated as follows:

23   > If any dispute arises from or relates to your employment with 24
24   > Hour Fitness or the termination of your employment, you and 24
25   > Hour Fitness agree that you both will submit it exclusively to
     > final arbitration.   Except for workers' compensation and
26   > unemployment insurance claims, the dispute includes every kind
     > or type of dispute including without limitation, any allegation of
27   > wrongful   discharge,   discrimination,   harassment,   unfair
     > competition, or any injury to a party's physical, mental or
     > economic interest.

28   > We agree to settle the dispute according to the provisions of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

3.

1
2
**Federal Arbitration Act, 9 U.S.C. sections 1-16**.  All disputes will be resolved by a <u>single</u> Arbitrator.  The Arbitrator shall be selected by mutual agreement of the parties.

3
4
If required by controlling law, 24 Hour Fitness will pay the fee for the arbitration proceeding.  Otherwise, each party will equally bear the costs of arbitration.

5       Hayward Decl. ¶7, Exh. C (emphasis added).

6
7
### C.       Despite The Express Agreement to Arbitrate, Claimant Refuses to Arbitrate His/Her Claims According to the Arbitration Agreement.

8             Claimant was formerly an opt-in plaintiff in an FLSA collective action entitled

9    *Beauperthuy v. 24 Hour Fitness*, Case No. C 06 0715 (SC), pending in the Northern District

10   of California.   The collective action sought overtime pay under the Fair Labor Standards Act

11   as a result of alleged misclassification of Claimant's manager position and/or off-the-clock

12   work by Claimant during his/her tenure as a trainer.   The collective action applied to

13   employees who worked in states other than California; even if a Claimant worked in

14   California at some point in their tenure with 24 Hour Fitness, any claims arising out of their

15   time in California were not part of the collective action and are not part of their arbitration

16   claims.   The collective action was decertified on February 24, 2011.    In connection with

17   decertification, the Court dismissed all opt-in Plaintiffs from the action without prejudice to

18   each such opt-in Plaintiff filing a suit in his or her own behalf.   The Court agreed to toll the

19   applicable statutes of limitations for 30 days after the entry of this Order to allow the opt-in

20   Plaintiffs time to file suit.   Hayward Decl. ¶2.

21            However, rather than file suit, on or about March 21-25, 2011, Claimant's

22   counsel filed arbitration demands with JAMS in San Francisco on behalf of 983 individuals,

23   including Claimant, ignoring the controlling terms of the parties' Arbitration Agreement as

24   set forth above.  The demand described the dispute as having been brought for "violations of

25   the Fair Labor Standards Act based on qualifying positions that [Claimant] held at 24 Hour

26   Fitness as a Personal Trainer ("PT") or club-level Manager ("Manager").  For PTs 24 Hour

27   required them to work off-the-clock performing training session and non-training session

28   related work (in addition, 24 Hour also miscalculated and failed to pay overtime properly for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

recorded hours worked) ("off-the-clock").  For Managers, 24 Hour misclassified them as exempt employees, and failed to pay them time and one half for all hours worked over 40 ("misclassification")."  Hayward Decl. ¶3, Exh. A.

On March 23, 2011, 24 Hour's Counsel informed Claimant's counsel that Claimant's demand was improper as it did not comport with the terms of the parties' written arbitration agreement and that 24 Hour would not agree to arbitrate this claim, which involves an employee who worked for 24 Hour Fitness outside California, before JAMS San Francisco.  Hayward Decl. ¶4.

On April 28 or 29, 2011, in response to Claimant's arbitration demand, 24 Hour asked Claimant to suggest the names of three arbitrators in the location where Claimant last worked for 24 Hour Fitness, in accordance with the terms of the parties arbitration agreement.  Hayward Decl. ¶5, Exh. B.  Thus, far Claimant has yet to propose an arbitrator. While the parties had been meeting and conferring over a way to handle all 983 claims, due to the fact that nearly eight months has elapsed without any agreement, 24 Hour Fitness is forced to file this Petition to force Claimant to arbitrate his/her claims in accordance with the terms of the Arbitration Agreement. *Id.*

## III.    LEGAL ANALYSIS

### A.    Federal Policy Favors Arbitration.

24 Hour Fitness is entitled to an order compelling arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA").[2]  The United States Supreme Court has unequivocally affirmed that the FAA applies to written arbitration agreements in the employment context. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. __ (June 21, 2010); *Circuit City Stores v. Adams*, 532 U.S. 105 (2001).  Under the FAA, a provision in any agreement, including an employment agreement, to settle controversies between the parties by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist

---

[2] The FAA applies to agreements "involving commerce." 9 U.S.C. § 2. "A written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The 2001 Arbitration Policy expressly provides that it is to be governed by the FAA.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

5.

1    at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *Perry v. Thomas,* 482

2    U.S. 483, 489 (1987).   The FAA was enacted to overcome courts' reluctance to enforce

3    arbitration agreements.  *See e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270

4    (1995); *Cronus Investments, Inc. v. Concierge Services*, 35 Cal. 4th 376, 383-384 (2005).  It

5    not only placed such agreements on equal footing with other contracts, but also established a

6    federal policy in favor of arbitration agreements, notwithstanding any state substantive or

7    procedural policies to the contrary.  *See, e.g., Green Tree Financial Corp. v. Randolph*, 531

8    U.S. 79, 89-90 (2000) (noting that the Supreme Court has "rejected generalized attacks on

9    arbitration that rest on 'suspicion of arbitration as a method of weakening the protections

10   afforded in the substantive law to would-be-complainants'"); *Southland Corp. v. Keating*,

11   465 U.S. 1, 10 (1984) (in enacting the FAA, "Congress declared a national policy favoring

12   arbitration and withdrew the power of the states to require a judicial forum for the resolution

13   of claims which the contracting parties agreed to resolve by arbitration").  This policy is so

14   significant that "even claims arising under a statute designed to further important social

15   policies may be arbitrated."  *Green Tree Financial Corp., supra*.  The FAA permits private

16   parties to "trade [] the procedures . . . of the courtroom for the simplicity, informality, and

17   expedition of arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 31 (1991).

18   As such, the United States Supreme Court has warned against judicial rulings designed to

19   erode FAA precedence "by indirection."  *Circuit City Stores, Inc.,* 532 U.S. at 122.  It is

20   instead the intent of Congress "to move the parties to an arbitrable dispute out of court and

21   into arbitration *as quickly and easily as possible*" and have "questions of arbitrability . . . be

22   addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone*

23   *Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 22-25 (1983).  *Accord, Roberts v.*

24   *Synergistic Int'l, L.L.C.,* 676 F. Supp.2d 934, 946 (E.D. Cal. 2009).

25            In fact, courts must defer to arbitration "unless it may be said with positive

26   assurance that the arbitration clause is not susceptible of an interpretation that covers the

27   asserted dispute . . .[;] doubts should be resolved in favor of coverage."  *United Steelworkers*

28   *of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).  "The standard for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

1  demonstrating arbitrability is not a high one; in fact, a district court has little discretion to

2  deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Ramirez-Baker*

3  *v. Beazer Homes, Inc.,* 636 F. Supp.2d 1008, 1015 (E.D. Cal. 2008) (quoting *Republic of*

4  *Nicaragua v. Standard Fruit Co.*, 937 F. 2d 469, 475 (9th Cir. 1991).

5      **B.**     **The Arbitration Agreement Satisfies Both "Gateway Issues" Before This
   Court.**

6

7          In deciding whether to compel arbitration under the FAA, the Court is tasked

8  with determining just two "gateway" issues: (1) whether there was an agreement to arbitrate

9  between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean*

10 *Witter Reynolds*, 537 U.S. 79, 83-84 (2002); *Pacificare Health Systems, Inc. v. Book,* 538

11 U.S. 401, 407 (2003).  Here, by demanding arbitration, albeit in the wrong forum, Claimant

12 has effectively conceded that a valid agreement to arbitrate exists and the claims at issue are

13 covered by the arbitration agreement.

14         The mutual assent of Claimant and 24 Hour Fitness to arbitrate this dispute is

15 clear in light of the fact that the 2001 Arbitration Policy expressly states "If any dispute

16 arises from or relates to your employment with 24 Hour Fitness...you and 24 Hour Fitness

17 agree that you both will submit it exclusively to final arbitration."

18         Claimant's employment ended during the time that the 2001 Arbitration

19 Agreement was in effect.  There was no mechanism by which Claimant could opt-out from

20 that agreement, and thus, Claimant is bound by the language.  Since Claimant is demanding

21 arbitration, there is no other arbitration agreement that could apply to Claimant's demand –

22 earlier agreements were superseded by the 2001 Agreement.

23         Further, the language of the Arbitration Agreement makes clear that

24 Claimant's allegations under the Fair Labor Standards Act relating to overtime pay are

25 covered.  As the Supreme Court stated in *Equal Employment Opportunity Commission v.*

26 *Waffle House,* 534 U.S. 279, 280 (2002), "[A]bsent some ambiguity in the agreement ... it is

27 the language of the contract that defines the scope of disputes subject to arbitration." *See*

28 *also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Doctor's*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

7.

1    *Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).   Moreover, in reviewing the

2    arbitration policy, the Court must be guided by the principle that arbitration agreements are

3    favored and are to be broadly construed with doubts being resolved in favor of coverage.

4    *See AT&T Technologies, Inc. v. Communications Workers of Am.* 475 U.S. 643, 648-650

5    (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

6           Here, Claimant alleges that he/she was improperly classified as an exempt

7    employee during his/her employment at 24 Hour Fitness and/or did not receive pay for all

8    hours worked while working as a trainer at 24 Hour Fitness.   This claim is clearly a dispute

9    which "arises from [claimant's] employment with 24 Hour Fitness."

10          **C.      The Court Should Order the Parties to Arbitrate in The District of
                      Arizona**

11          The Court should order arbitration in accordance with the terms of the parties'

12   agreement. "There is no federal policy favoring arbitration under a certain set of procedural

13   rules; the federal policy is simply to ensure the enforceability, according to their terms, of

14   private agreements to arbitrate.   *Volt Info. Sciences v. Board of Trustees of the Leland*

15   *Stanford Junior University*, 489 U.S. 468, 476 (1989).   Section 4 of the FAA requires

16   arbitration "in accordance with the terms of the agreement."   9 U.S.C. §4.   Accordingly,

17   "parties are generally free to structure their arbitration agreements as they see fit..." *Volt*,

18   489 U.S. at 479; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 54

19   (1995) ("[C]ourts are bound to interpret contracts in accordance with the expressed

20   intentions of the parties.").

21          A federal district court has jurisdiction to enforce a forum-selection clause in

22   an arbitration agreement under 9 U.S.C. §4 when the forum-selection clause requires

23   arbitration in that district:

24
25          A party aggrieved by the alleged failure, neglect, or refusal of
            another to arbitrate under a written agreement for arbitration may
            petition any United States district court which, save for such
26          agreement, would have jurisdiction under Title 28...for an order
            directing such arbitration proceed in the manner provided for in
27          such agreement...The hearing and proceedings, under such
            agreement, *shall be within the district in which the petition for an*
28          *order directing such arbitration is filed.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

8.

1    In fact, where the arbitration agreement contains a forum selection clause, only the district in

2    that forum can issue a §4 order compelling arbitration.  *Snyder v. Smith* 736 F. 2d 409, 419-

3    20 (7th Cir. 1984);  *Sterling Fin'l Inv. Group, Inc. v. Hammer* (11th Cir. 2004) 393 F. 3d

4    1223, 1225.  (district court properly enforced Florida venue provision pursuant to 9 USC §4

5    where NASD had referred arbitration to a panel of arbitrators in Houston, Texas).

6              Under the 2001 Arbitration Agreement, the parties agreed that an arbitrator

7    would be selected "by mutual agreement of the parties."  While the Agreement itself is silent

8    on the location of the arbitration hearing, there exists no reason why the hearing should be

9    held someplace other than the location where Claimant last worked for 24 Hour Fitness

10   where any claims encompassed in the *Beauperthuy* action would have arisen.  That location

11   is within this District.  Relevant witnesses and documents will likely be located in or near the

12   location where the Claimant worked.  It would be absurd to require Claimant and all

13   percipient witnesses to travel from Tempe, Arizona to California or some other location for a

14   hearing.

15   **IV.    CONCLUSION**

16        For all the foregoing reasons, 24 Hour Fitness respectfully requests an order

17   compelling Claimant to arbitrate his/her claims in accordance with the 2001 Arbitration.

18

19
     Dated: December 7, 2011              *s/ Laurent R.G. Badoux*
20                                        Laurent R.G. Badoux
                                          LITTLER MENDELSON
21                                        A Professional Corporation
                                          Attorneys for Petitioner
22                                        24 HOUR FITNESS USA, INC.

23

24

25   Firmwide:105493471.1 034670.1216

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

9.